In the Matter of the PORT AUTHORITY TRANS-HUDSON CORPORATION, Relative to Acquiring Title to Real Property in the State of New York and the State of New Jersey for Hudson Tubes Purposes.

Supreme Court, Special Term, New York County, April 25, 1966.

*Sullivan & Cromwell* (*David W. Peck* of counsel), for Hudson & Manhattan Corporation. *Sidney Goldstein* (*Simpson Thacher & Bartlett* and *Whitney North Seymour* of counsel), for Port Authority Trans-Hudson Corporation.

CHARLES A. LORETO, J. The objections of petitioner, Port Authority Trans-Hudson Corporation, to the second and last separate and partial tentative decree of the court filed February 2, 1966 (48 Misc 2d 485) [1] in the above proceeding, with respect to Damage Parcels 1 through 53, are overruled in their entirety.

Essentially the objections raise questions of law which have been fully considered by this court and present questions which

---

1. Modified with opinion 27 A D 2d 32.

petitioner apparently may choose to present to the appellate courts.

With respect to objections numbered 1, 3, 7 and 8, which are directed to the relevancy and weight of the evidence considered insofar as they pertain to the determination of the award for the railroad, the court makes the following observations.

After allocating $30,000,000 for the tunnels and subways, and mindful that they represent more than 50% of the worth of the entire railroad (Burpee's testimony), adding an amount it considered fair and just for the remainder and treating the railroad as an entire integrated and operating system, the court made an award of $55,000,000 for the entire system.

It may be appropriate to state here briefly an approach used as a check for the figure ascribed for the remainder of the railroad excluding tunnels and subways, in arriving at the award for the entire railroad. Recalling the finding on the evidence that the tunnels and subways represented in value somewhat more than the remainder of the railway, and having ascribed $30,000,000 to the former, the court was left with the task of ascribing a value to the latter merely as components of the railway. For these, plus an amount representing increment for an integrated operating railway — one in use — it assigns a figure of $25,000,000. Taking each item, excluding tunnels and subways, on claimant's Exhibit DD at original cost, which was undisputed, it appears that the total original cost for these items is $29,985,638.[2] These perhaps hardly need any extension of remarks. But it is difficult to refrain from noting a blindness which refuses to credit the reality of this railroad system as one integrated, vital and in use. Particularly apt is the statement of Mr. Justice HECHT JR., in his opinion in *Matter of City of New York (Fifth Avenue Coach)* (47 Misc 2d 734, 737) to the effect: "The plain fact is that the city [here PATH] was able to walk in on the date of condemnation, and continued to operate this transit system without interruption, just as it had been operated up to condemnation."

PATH, having taken a legal position, deliberately chose to ignore the evidence as to original cost. The opinion of the court sets forth its reasons for the justness in considering original cost. It is clear to the court that it would perpetrate a gross injustice, shocking to its conscience, if it were to assign to it, though not profitably operating, but scrap value. Confronted with formidable reproduction estimates (almost ten times the original cost), which could properly not be used as the measure

2. See Addendum (Exhibit DD).

of valuation for reasons stated in its opinion, the court believed they impressively buttressed and fortified the rationale and equity in the use of original cost.

Although the record is devoid of any satisfactory guide for deciding a proper allowance for depreciation and obsolescence in using original cost — and it may even be reasonably urged that none should be allowed in this case — the court decided that some adjustment of original cost equitably would be proper to consider. It would be futile to go down the list of components, ascribing a percentage for depreciation and obsolescence to each, for there is much room for a difference of opinion as to how much any component should be discounted. No definitive help in this regard can be found in the trial record. The court, however, has had the benefit of a statutory viewing of the railroad in operation. This was of some help in considering some discount, and in believing some items could be chargeable with more depreciation and obsolescence than others. For instance, engineers' fees, attorneys' fees, insurance and liability charges, in its opinion, would not be subject to depreciation. Original cost of furniture and railroad cars would probably be charged off completely. However, there must be added to the list an item of 20 new cars purchased only several years before condemnation at a cost of $1,600,000, which would carry a low per cent of depreciation.

In the light of these considerations and the fact that during the years adequate maintenance for the continued operation of the railroad was provided and replacements were made, the court would prefer to consider all these components in the aggregate and not separately, for an over-all discount, which in its judgment fairly should be roughly one third of original cost. Rounded, the figure which in its conscientious consideration of all factors then to be ascribed as the fair value of the components representing the remainder of the railway system — as unconnected items of property — is the sum of $20,000,000.

Next, adding 10% as increment to the total ascribed to tunnels and subways plus all other components of the railway, the award of $55,000,000 is arrived at. It may be even assumed that there is room for difference of opinion as to the over-all percentage of discount for these components. Nonetheless this result would be fairly struck in justly using a higher percentage for increment — even 15%, which is amply warranted in this case.

No one can hope to find here the factors necessary for reaching some degree of mathematical exactitude in the ascertainment of just compensation. Therefore, the court charged with the responsibility of making such an award, faced with an onerous

task, truly bears a grave responsibility. After searching and studying the evidence, passing upon credibility and weight of the evidence, and probing its conscience in order to arrive at an award which is fair, just and equitable, all that can be expected is the attainment of substantial justice.

### EXHIBIT DD

*Hudson Rapid Tubes Corporation*

*Original Cost of Railroad Property at September 1, 1962*

| | Original Cost of Property Condemned |
|---|---:|
| **Net Original Cost of Properties Constructed by Company:** | |
| Engineering | $1,844,465.91 |
| Right of Way | 334,469.86 |
| Other Land Used in Railroad Operations | 691,586.13 |
| Grading | 2,758.47 |
| Ballast | 20,860.74 |
| Ties | 19,074.16 |
| Rails, Rail Fastenings, & Joints | 821,037.69 |
| Special Work | 70,602.39 |
| Track & Roadway Labor | 125,323.95 |
| Paving | 872.45 |
| Roadway Machinery | 40,148.47 |
| Tunnels & Subways | 31,999,802.76 |
| Crossings, Fences, & Signs | 421.30 |
| Signals & Interlockers — Regular | 1,248,214.68 |
| Signals & Interlockers — Elec. Compressors | 80,999.73 |
| Communication Systems | 136,219.93 |
| Distribution System | 865,891.13 |
| Shops, Car Houses, & Garages | 1,359,562.78 |
| Stations, Misc. Buildings, & Structures | 3,750,872.30 |
| Passenger Cars | 3,828,533.67 |
| Service Equipment | 13,405.75 |
| Electric Equipment — Passenger Cars | 2,421,336.39 |
| Electric Equipment — Service Eqpt | 1,189.05 |
| Shop Equipment | 231,189.62 |
| Furniture | 11,358.50 |
| Automotive & Miscellaneous Eqpt | 21,928.16 |
| Power Plants | 570,805.19 |
| Power Plants — Substation Buildings | 100,935.24 |
| Power Plant Equipment | 801,137.80 |
| Transmission System | 429,534.86 |
| Franchises | 49,499.98 |
| Organization Expenditures | 34,894.13 |
| Interest during Construction | 6,427,931.98 |
| Law Expenditures | 318,745.73 |
| Injuries & Damages | 394,009.89 |
| Taxes | 362,242.71 |
| Miscellaneous Expenditures | 1,402,807.61 |
| Construction Work in Progress — Signals & Interlocker | 1,039,768.92 |
| Total Cost of Property Constructed by Company | |
| Properties Acquired Prior to December 31, 1908 | |
| Total | $61,874,440.01 |